IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| WESLEY IRA PURKEY,<br><br>          Petitioner-Appellant,<br><br>    v.<br><br>WARDEN OF USP TERRE HAUTE,<br><br>UNITED STATES OF AMERICA,<br><br>          Respondents-Appellees. | No. Click here to enter text.<br><br>District Court No. Click here to enter text.<br><br><u>Death-Penalty Case</u><br><br>Emergency Motion for Stay of Execution<br><br>Execution Date set for July 15, 202 |

## I.     INTRODUCTION

Pursuant to Seventh Circuit Rule 22(h), Petitioner-Appellant Wesley Ira Purkey, by and through undersigned counsel, hereby moves this Court for an emergency stay of his execution date, currently scheduled for July 16, 2020 at 4:30 a.m., because he has established a threshold showing of incompetency to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1985). Because the appeal is from a § 2241 petition, there is no Certificate of Appealability requirement. A request for a stay of execution has been filed in district court along with this request. The government has notified counsel of its intent to execute Mr. Purkey at 4:30 a.m.

Mr. Purkey seeks this emergency stay after the United States Supreme Court vacated multiple stays of execution today. Mr. Purkey's execution date had been stayed since July 2.

In a 5-4 order (without opinion) the Court vacated a stay based on Mr. Purkey's competence to be executed pursuant to *Ford v. Wainwright*. Critically, the dissent wrote that "the Government has not come close to showing that the District Court erred in finding Purkey likely to succeed on the merits of his *Ford* claim and his request for a competency hearing." Slip 4 Further, the 4 justice dissent observed that "it is thus undisputed that there is a District Court in which Purkey may properly pursue his *Ford* claim and his request for a competency hearing." Slip 3. Further, the dissent noted that "the Government does not appear to dispute that Purkey may advance his competency claims in a U. S. C. §2241 proceeding filed in the Southern District of Indiana. It identifies no procedural barriers to such a suit." Slip Op. 2-3 (Sotomayor, J., Dissent).

Mr. Purkey initially filed his *Ford* claim in the District of Columbia as a *Bivens* action and it has been pending in that court since November 2019. ECF No.1. Mr. Purkey has not been dilatory. *See Purkey v. Barr*, 1:19-cv-03570-TSC, ECF No. 1 (Complaint filed November 26, 2019). In fact after the first warrant of execution expired, Mr. Purkey continued to pursue his *Ford* claim in the District of Columbia but the Government moved to dismiss, or transfer to the District of Indiana, in March 2020. ECF No. 18. In their motion to dismiss, the Government specifically argued that Mr. Purkey's claim was not ripe because there was no warrant of execution. ECF No. 18. However, on June 15, the Government again moved for a second

warrant of execution against Mr. Purkey (ECF No. 22) and Mr. Purkey again continued to press his *Ford* claim in the District of Columbia. ECF No. 34. The District of Columbia did not issue any decision regarding the viability of the *Ford* claim until today, the day scheduled for his execution. ECF No. 36. Because the Government's arguments against a stay in the *Bivens* action have centered around Mr. Purkey's choice to file as a *Bivens* action instead of a habeas petition pursuant to § 2241 (ECF No. 18), Mr. Purkey was left with no choice but to file a protective stay motion pending §2241 petition in the District of Indiana on the day before his scheduled execution. Yesterday this court denied that stay because there was no there was §2241 petition before it, but noted that "If he is directed to bring a *Ford* claim in a § 2241 petition in this Court, then he must file a *Ford* claim in a § 2241 petition in this Court. The instant motion must be brought in that action, when and if it is filed." Order, 2:19-cv-00517, ECF 83

Also, just today, in the District of Columbia's order granting a preliminary injunction in the *Bivens Ford* action, it gave Mr. Purkey until July 31 to show cause why his case should not be transferred to the Southern District of Indiana to be filed as a § 2241 petition. Case 1:19-cv-03570-TSC, ECF No. 36, Order, July 15, 2020. Because Mr. Purkey's execution is scheduled for today (Case 1:19-cv-03570-TSC, ECF No. 22, Defendant's Notice Regarding Execution Date, June 15, 2020), and because the Government has moved to vacate the preliminary injunction on the

3

grounds that it should have been filed in the Southern District of Indiana as a § 2241 petition (Case 1:19-cv-03570-TSC, ECF No. 18 p. 12, Defendants' Motion to Dismiss or, in the Alternative, to Transfer, February 24, 2020), Mr. Purkey needed to accelerate his decision to protectively transfer the case and file a § 2241.

Under Circuit Rule 22(h)(1), this Court has discretion to determine whether a stay of execution is warranted. The question centers on whether the applicant will suffer irreparable injury and whether there is a reasonable probability of success in this Court. *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995). In a death penalty case, where the requested stay involves an imminent execution, "[t]here can be no doubt" that the defendant "faces irreparable injury." *Id.* at 1360 (citation omitted); *see also Lambert v. Buss*, Case No. 05-2610 (7th Cir. June 17, 2005) (order staying execution while court determined whether COA should issue), *motion to vacate stay denied Davis v. Lambert*, 545 U.S. 1136 (2005). . Therefore, the only question before this Court is whether there is merit to Mr. Purkey's underlying issue. The primary underlying issue involves whether Mr. Purkey has established a substantial threshold showing that his is incompetent to be executed.

## II. PURKEY HAS SET FORTH A *PRIMA FACIE FORD* CLAIM, ENTITLING HIM TO A HEARING ON HIS COMPETENCY TO BE EXECUTED

Mr. Purkey has established a *prima facie* case that he is incompetent to be executed. As the 4 justice dissent wrote "the Government has not come close to

4

showing that the District Court erred in finding Purkey likely to succeed on the merits of his *Ford* claim and his request for a competency hearing." Slip 4

The Eighth Amendment's prohibition on cruel and unusual punishment bars the government from executing someone who is incompetent. *Panetti v. Quarterman*, 551 U.S. 930, 934 (2007); *Ford v. Wainwright*, 477 U.S. 399 (1985); *see also Madison v. Alabama*, 139 S. Ct. 718, 722 (2019). A condemned prisoner is incompetent when he cannot rationally understand his punishment or the reason for it. *Id*. When a petitioner has made a substantial threshold showing of incompetency, he is entitled to a stay of execution for a judicial hearing regarding his competency:

> Once a prisoner seeking a stay of execution has made "a substantial threshold showing of insanity," the protection afforded by procedural due process includes a "fair hearing" in accord with fundamental fairness. *Ford*, 477 U.S., at 426, 424, 106 S.Ct. 2595 (opinion concurring in part and concurring in judgment) (internal quotation marks omitted). This protection means a prisoner must be accorded an "opportunity to be heard," i*d.,* at 424, 106 S.Ct. 2595 (internal quotation marks omitted), though "a constitutionally acceptable procedure may be far less formal than a trial," *id.,* at 427, 106 S.Ct. 2595.

*Panetti*, 551 U.S. at 949.

The Eighth Amendment bars the execution of those whose mental illness is of such magnitude that it distorts their view of their impending punishment so that "it has little or no relation to the understanding of those concepts shared by the

community as a whole." *Panetti v. Quarterman* 551 U.S. 930, 958-59 (2007). An incompetent prisoner will be unable to comprehend "why he has been singled out" to die. *Ford v. Wainwright*, 477 U.S. 399, 409 (1986). In *Madison v. Alabama*, 139 S. Ct. 718 (2019), the Supreme Court specifically addressed this issue in the context of a prisoner that was suffering from dementia. *Id.* at 722. The Court recognized that this "condition can cause such disorientation and cognitive decline as to prevent a person from sustaining a rational understanding of why the State wants to execute him" *Id.* at 729.

The Supreme Court has recognized that evidence of either delusional disorders or dementia can establish a threshold showing of incompetency. As the Supreme Court recently explained in *Madison*, "a delusional disorder can be of such severity—can 'so impair the prisoner's concept of reality'—that someone in its thrall will be unable 'to come to grips with' the punishment's meaning." *Madison*, 139 S.Ct. at 729 (citing *Panetti*, 551 U.S. at 958; *Ford*, 477 U.S. at 409).

In *Panetti*, the facts establishing the "substantial threshold showing" necessitated a competency hearing included merely "a letter and a declaration from two individuals, a psychologist and a law professor, who had interviewed petitioner while on death row on February 3, 2004. The new evidence, according to counsel, demonstrated that petitioner did not understand the reasons he was about to be executed." *Id*. at 938. In *Madison*, the petitioner presented a psychologist

report indicating that due to the petitioner's vascular dementia, the petitioner did not comprehend the "reasoning behind" Alabama's effort to execute him. *Madison,* 139 S. Ct. 718.

Here, Mr. Purkey presents similar facts: a report of a neuropsychologist concluding that Mr. Purkey has dementia and a report of a neuropsychiatrist concluding that Mr. Purkey—due his irrational delusions and dementia—does not have a rational understanding of the basis for his execution. Specifically, Mr. Purkey presents a neuropsychiatric report finding that by virtue of his Alzheimer's Disease, cognitive impairments, and severe mental illness, Mr. Purkey "lack[s] a rational understanding of the basis for his execution." *Compl.* Exh. 1 at 11-12. Instead, he maintains "a fixed belief that he is going to be executed in retaliation for his legal work, to prevent him from being a hassle for the government." *Compl.* Exh. 1 at 12.  Although Mr. Purkey's mental health issues have been lifelong and myriad, he was diagnosed in 2017 with progressive dementia, causing a noticeable decline in his functioning, including memory loss and increased agitation.  *Id.* at 2. Mr. Purkey's life history contains three important risk factors for dementia – "age, family history and head injuries."  *Id.* at 9.  On both his maternal and paternal side there is a history of significant neurodegenerative disease with an onset later in life.  *Id.* at 9.

Contemporaneous institutional records and psychiatric evaluations document decades of delusional behavior and the progression of dementia that support the expert's conclusion. *See* Compl. *Exs*. 1, 3, 9, 12-15. Purkey has also come forward with affidavits from those he has regular interactions with who have noted the decline in functioning. *See* C*ompl., Exs*., 5, 7. Mr. Purkey evidences physical manifestations of his decline, include persistent stuttering, slurring, shaky hands, and impaired balance. *Compl. Exh.* 1 at 3.

During his interview with the neuropsychiatrist, Mr. Purkey specifically told the expert that he was being executed in retaliation for his legal work. *Compl Exh.* 1 at 3. This is why Mr. Purkey believes he has been "singled out" for execution, not because of the crime he has been convicted of. *See Ford,* 477 U.S. at 409 (holding that someone is incompetent when they cannot comprehend the real reason they have been "singled out" for execution). Prior to this, Mr. Purkey held a long-standing belief in an extensive poisoning conspiracy, which lead him to contact the Kansas Bureau of investigation to report an implant in his chest that was controlled remotely in order to poison him. *Compl. Exh.* 1 at 7.

While in prison for this crime, Mr. Purkey has been a prolific filer of grievances and lawsuits. *Id.* at 9. A review of these documents show a persistent belief that Mr. Purkey is being persecuted for these filings and these grievances "are repetitive and tangential, often lacking coherence at times in direct

contravention to each other." *Id.* at 9. He also has a "commitment to false memories" that directly interferes with his ability to work with present counsel. *Id.* at 10.

Because Dr. Agharkhar first visited Mr. Purkey in 2016, he was also able to observe the noticeable decline when he next saw Mr. Purkey three years later, in 2019. *Id.* at 10. Importantly, he noticed a difference in the right and left side of Mr. Purkey's face, indicating a possible stroke. *Id.* at 10. Like the lay witnesses, Dr. Agharkhar also observed stuttering, slurring and inability to pronounce words, things he did not observe during the 2016 visit. *Id.* Compounding the problem, Mr. Purkey has little to no insight into his mental health issues. *Id.* at 11-12.

As 2019 visit progressed, Mr. Purkey began to open up more about the "real reason" for his execution:

> He told me that he was actually being executed because he is filing lawsuits for other people's cases. "I've helped so many people here. The lawyers suck. No one advocates for the inmates, they need me." Mr. Purkey described how he is the reason other prisoners are getting things filed in their case. He reports that the guards have told him that they know his legal filings are the reason for his execution, something they tell him all the time. It was clear in our conversation that Mr. Purkey sincerely believes these conversations with correctional officers have occurred.

*Id.* at 11. This sincere belief is part of a larger long-term conspiracy of Mr. Purkey's that he is constantly being retaliated against for his legal work and this

belief system "prevents him from having a rational understanding of the purpose of his execution." *Id.*at 12. These long-held delusions have been exacerbated by the brain damage that is a result of his increasing dementia. *Id.*at 12.

As in *Panetti*, the fact that Mr. Purkey is aware of the state's position asserting that it wishes to execute him for his murder does not render him unable to establish his incompetency. *Panetti*, 551 U.S. at 955 (finding incompetency where the evidence establish that "although petitioner claims to understand 'that the state is saying that [it wishes] to execute him for [his] murders,' he believes in earnest that the stated reason is a 'sham' and the State in truth wants to execute him 'to stop him from preaching.'") (citations omitted). Although Mr. Purkey "can recite the fact that his execution is for the murder of Jennifer Long, he lacks rational understanding of that fact." *Compl.,* Ex. 1 at 11–12, ECF No. 1-1; *Panetti*, 551 U.S. at 938. Much like Panetti, Mr. Purkey misunderstands the real reason for his execution, instead believing it is a "conspiracy of retaliation . . . for his legal work." *Id*. In fact, in other litigation the Government itself has characterized Mr. Purkey's thought processes are not rational but the stuff of a "bizarre conspiracy." *See Purkey v. Barr*, Case No. 2:19-cv-00517-JMS-DLP, ECF No. 77 at 2 (S.D. IN July 10, 2020).

Dr. Agharkhar also ruled out any possibility that Mr. Purkey was malingering. *Id.* at 12. In fact, Mr. Purkey expresses a desire not to be found

10

incompetent and actually minimizes his symptoms. *Id.*at 12. In summary, Dr. Agharkhar found that Mr. Purkey's "underlying brain damage and mental illness . . . are long-standing, irreversible, and will continue to deteriorate as his dementia progresses." *Id.* at 13.

In addition to Dr. Agharkhar, Dr. Hyde, a neurologist, conducted a review of Mr. Purkey's medical records and prior expert reports. Declaration of Thomas M. Hyde, M.D., Ph.D. *Purkey v. Barr,* Mo. 1:19-cv-03570-TSC, ECF No. 23-4, (D.C. Cir. June 15, 2020). Dr. Hyde has extensive experience with Alzehimer's and other dementia related disorders. *Id.* at 2-3. The records he reviewed "provide substantive evidence of Mr. Purkey's neurological deterioration over time affecting memory and cognitive function that is compatible with the diagnosis of a dementing disorder." *Id.* at 5. Dr. Hyde reviewed the completed MRI just today and those results are consistent with his prior findings of dementia, with the imaging showing signs of atrophy in Mr. Purkey's brain. Dementia is a decline in cognitive functioning that "adversely impacts a person's activities of daily living." *Id.*at 5. Contrary to popular belief, dementia "is **not** a normal part of aging." *Id.* (emphasis in original).

Dr. Hyde specifically noted the drop in neuropsychological testing scores between 2016 and 2019, specifically on measurements of memory. *Id.* at 6. The 2019 test results "were strongly indicative of Alzheimer's disease dementia with

documented decline." *Id.* at 7. His review of the records led him to conclude that "the course of his progressive deterioration are consistent with the diagnosis of dementia." *Id.* at 10.

Like the petitioners in *Panetti* and *Madison*, Mr. Purkey has made a substantial threshold showing of his incompetence for execution. *See Eldridge v. Thaler*, Civil Action No. H-05-1847, 2009 WL 3856672 (S.D. Tex. Nov. 17, 2009) (finding a substantial threshold showing of Ford insanity where the petitioner "submitted evidence from lay observers about his bizarre behavior and his delusional statements," including a belief his food is poisoned, evidence that his mental health has deteriorated in the last few years, and expert evidence corroborating those observations and opining on incompetence); *Wood v. Quarterman*, 572 F. Supp. 2d 814, 819 (W.D. Tex. 2008), *aff'd sub nom. Wood v. Stephens*, 619 F. App'x 304 (5th Cir. 2015) (petitioner was entitled to a *Ford* hearing based on his record of suicides, prior mental health problems, paranoia, and delusional statements to counsel).

## III. THIS COURT SHOULD STAY MR. PURKEY'S EXECUTION PENDING A DECISION ON THE MERITS UNDER *LONCHAR V. THOMAS*

A federal must stay an execution to prevent the case from becoming moot when: (1) the request is a "first federal habeas case," and (2) the court cannot dismiss the petition on the merits before the scheduled execution. *Lonchar v.*

*Thomas*, 517 U.S. 314, 320 (1996). The rules and principles related to the Great Writ of Habeas Corpus "seek to maintain the courts' freedom to issue the writ, aptly described as the 'highest safeguard of liberty,' . . . while at the same time avoiding serious, improper delay, expense, complexity, and interference with a State's interest in the 'finality' of its own legal processes." *Lonchar* at 322–23.

**A. Mr. Purkey's Federal *Ford* Claim That He is Incompetent to be Executed is a "First Habeas" Claim**

*Ford* incompetency claims only become ripe when execution is imminent and therefore could not and should not have been brought prior to Mr. Purkey's execution being scheduled. *See Panetti*, 551 U.S. at 947 ("The statutory bar on "second or successive" applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe."); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (a *Ford* petition was not a "second or successive" application because although it "may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, . . . this does not mean that there were two separate applications, . . . ."); *see Amaya-Ruiz v. Stewart*, 136 F.Supp.2d 1014, 1020 (D. Ariz. 2001) (a *Ford* petition is not "second or successive" petition even though the *Ford* claim was raised in the initial petition and dismissed without prejudice)

Mr. Purkey raised his *Ford* claim upon issuance of his first execution warrant in 2019 and has been continually seeking review on the merits for the nearly nine months since. *See Purkey v. Barr*, 1:19-cv-03570-TSC, ECF No. 1 (complaint filed November 26, 2019). Mr. Purkey has continued to attempt to fully and fairly adjudicate his competency claim since that time in the face of Respondents' refusal to provide any information relevant to the claim that remains exclusively in their possession.

Mr. Purkey's *Ford* claim remains unresolved on the merits (or otherwise) and, thus, is still a "first habeas claim[]."

**B.      The Court Cannot Dismiss Mr. Purkey's *Ford* Claim on the Merits Because he has Exceeded the Threshold Showing of Incompetency and is Entitled to Due Process**

Under *Lonchar*, "when a district court is faced with a request for a stay in a first federal habeas case [and] the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot." *Lonchar*, 517 U.S. at 320; *Garrison v. Patterson*, 391 U.S. 464 (1968); *Carafas v. LaVallee*, 391 U.S. 234 (1968); *Nowakowski v. Maroney*, 386 U.S. 542 (1967). "[A]pproving an execution before the merits are decided is improper." *Barefoot v. Estelle*, 463 U.S. 880, 889 (1983) (explaining that "there must be ample evidence that in disposing of the appeal, the merits have been addressed."; *House v. Bell*, 547 U.S. 518, 539

14

(2006) (citing to *Lonchar*, at 324) (the "dismissal of a first habeas petition is a particularly serious matter"); *see also Stokes v. Stirling*, 2016 U.S. Dist. LEXIS 33618 (D.S.C. Mar. 16, 2016) ("If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot."); *Nika v. Baker*, 2015 U.S. Dist. LEXIS 84121 (D. Nev. June 18, 2015) (same); *Bedford v. Bobby*, 2011 U.S. Dist. LEXIS 52228 (S.D. Ohio May 16, 2011) (same); *Cone v. Bell*, 956 F. Supp. 1401 (W.D. Tenn. 1997) (same); *Abdur'Rahman v. Bell*, 927 F. Supp. 262 (M.D. Tenn. 1996) (same).

In order to dismiss Mr. Purkey's *Ford* claim on the merits, the Court would need to find that, despite the ample evidence of incompetency presented, Mr. Purkey has failed as a matter of law to state a claim entitling him to a *Ford* competency hearing..  Mr. Purkey has exceeded this threshold showing.

## CONCLUSION

Because Purkey has shown both an irreparable injury (his death) and a reasonably probability of success on appeal, this Court should exercise its discretion and stay his impending execution.

Respectfully submitted 16 day of July, 2020.

Respectfully Submitted,

/s/Rebecca E. Woodman

Rebecca E. Woodman (Court appointed)
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
Telephone: (785) 979-3672
Email: rewlaw@outlook.com

/s/Michelle M. Law

Michelle M. Law, MO Bar No. 45487
(Court appointed) (*pro hac vice*)
Assistant Federal Public Defender
Western District of Missouri
901 Saint Louis Street, Suite 801
Springfield, Missouri 65806
Telephone: (417) 873-9022
Facsimile:  (417) 873-9038
Email: michelle_law@fd.org

Charles F.B. McAleer, Jr. (DC Bar
#388681) (*pro hac vice* motion to be filed)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5963
Email: CMcAleer@milchev.com

Brian Fleming (DC Bar #974889) (*pro hac
vice* motion to be filed)
Miller & Chevalier Chartered
900 16th Street NW
Washington, D.C. 20006
Telephone: (202) 626-5871
Email: bfleming@milchev.com

**Counsel for Petitioner**

16

**Certificate of Service**

I hereby certify that on July 16, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/Rebecca E. Woodman*
Rebecca E. Woodman (Court appointed)